IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EVA LORENE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-367-GLJ |
| ) | |
| MARTIN O'MALLEY,[1] ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

# OPINION AND ORDER

Claimant Eva Lorene Smith requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if [her] physical or mental impairment or impairments are of such severity that

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kijakazi as the Defendant in this action.

[she] is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairments *are not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 48 years old at the time of the administrative hearing. (Tr. 42, 405). She completed the eleventh grade and later had training in computer repair and networking. She has worked as a floor attendant, cleaner, and stock clerk. (Tr. 33, 442). Claimant alleges an inability to work since December 3, 2017, due to an anxiety disorder; depression; agoraphobia; panic disorder; osteoarthritis in her back, knee, and shoulder; high blood pressure; carpal tunnel; problems with hand/wrist/arm and elbow; and acid reflux. (Tr. 440).

## Procedural History

On April 10, 2019, Claimant applied for supplemental security income benefits under Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. Her application was denied initially and upon reconsideration. Administrative Law Judge ("ALJ") David Engel conducted an administrative hearing and determined that Claimant was not disabled in a written decision dated December 18, 2020. (Tr. 205-224). The Appeals Council then vacated ALJ Engel's written decision and remanded for resolution of a proper assessment of Claimant's residual functional capacity ("RFC"). On remand, ALJ Mark Mendola conducted a second administrative hearing and again determined Claimant was not disabled in a written decision dated May 16, 2022. The Appeals Council denied review,

making ALJ Mendola's opinion the Commissioner's final decision for the purpose of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two he determined that Claimant had the severe impairments of degenerative disc disease lumbar spine, bilateral knee disorder, left shoulder disorder, bilateral hand disorder, obesity, and anxiety disorder, as well as the nonsevere impairments of bilateral heel spurs and bilateral hip disorders. (Tr. 25). At step three, he determined Claimant did not meet any Listing. (Tr. 25). At step four he found Claimant had the RFC to perform less than the full range of sedentary work as defined in 20 C.F.R. § 416.967(a), *i.e.*, that she could only stand or walk for four hours combined, and she could only frequently reach overhead with the left upper extremity and handle and finger objects bilaterally. Additionally, he found she could understand, remember, and carry out simple tasks and instructions consisted with GED reasoning levels 1 and 2, relate to coworkers and supervisors on a superficial work basis, respond to ordinary work pressures, and adapt to changes in a routine work setting, but her work responsibilities should not include interaction with the general public and she could only be exposed to the general public on a brief, incidental basis (*e.g.*, no customer service). (Tr. 27). The ALJ then concluded that although Claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy such as office helper, escort vehicle driver, and addresser. (Tr. 32-34).

## Review

Claimant contends the ALJ erred at step four in evaluating her obesity as part of the RFC, and further erred at step five in identifying jobs she can perform.  The Court finds these contentions unpersuasive for the following reasons.

The medical evidence in the record relevant to Claimant's obesity reveals that her weight ranged from 247.5 pounds (Tr. 588) one month prior to the alleged onset date, to 272.80 (Tr. 1085) at the highest.  (Tr., *e.g.*, 600, 721, 860, 874, 884, 1110).  State examiners determined initially that Claimant had the RFC to perform light work, with a limitation to frequent left overhead reaching.  (Tr. 143-145, 178-180).  The RFC "Additional Explanation" noted a February 8, 2019 record where the Claimant's weight was 268 pounds, her height was 69 inches, and her BMI was 39.13.  (Tr. 145, 179).  Upon reconsideration, the reviewing physician found the same limitations except that she could only stand/walk four hours in an eight-hour workday (rather than the customary 6 hours for light work). (Tr. 178).  The "Additional Explanation" again noted the same record containing her weight, height, and BMI.  (Tr. 179).

In his written opinion at step four, the ALJ summarizes Claimant's hearing testimony as well as much of the medical evidence in the record.  (Tr. 27-32).  As relevant to this appeal, the ALJ twice notes one treatment record indicating Claimant's weight was 272.8 pounds, and further notes her height and BMI.  (Tr. 29, 30).  This appears to be the highest weight in the record.  Additionally, he states that he carefully considered Claimant's obesity in light of Soc. Sec. Rul. 19-2p and provides examples of how obesity can have affect various functions, noting that the combined effects of obesity with other

impairments may be greater than without obesity. He then states that the RFC takes into account her obesity, which was therefore included within the RFC. (Tr. 30-31). The ALJ states he considered the state reviewing physician conclusions but did not assess them. (Tr. 31-32). The ALJ then asserts that the assigned RFC is supported by the aforementioned medical evidence and ultimately concludes that Claimant is not disabled. (Tr. 32-34).

    Obesity. Turning first to Claimant's argument regarding obesity, an RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id*. This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7. Here, the ALJ has fulfilled his duty. Claimant nevertheless asserts that the ALJ failed to properly evaluate the impact her obesity has on her RFC.

SSR 19-2p requires an ALJ to consider when assessing the RFC that "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately." Soc. Sec. Rul. 19-2p, 2019 WL 2374244, *4 (May 20, 2019). "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment(s)." *Id.* at *2. Accordingly, the ALJ should "not make general assumptions about the severity or functional effects of obesity combined with another impairment(s)," but should "evaluate each case based on the information in the case record." *Id.* at *4. At the same time, the obesity consideration may be "subsumed within the discussion of [a claimant's] other medical conditions." *Razo v. Colvin*, 663 Fed. Appx. 710, 716 (10th Cir. 2016).

The ALJ found at step two that Claimant's obesity was a severe impairment. (Tr. 25). At step four, the ALJ set forth Claimant's height, weight, and BMI, and further noted that the assigned RFC accounted for her obesity. (Tr. 29-31). Consistent with the guidance of Soc. Sec. Rul 19-2p, the ALJ considered Claimant's obesity throughout his decision. Further, the ALJ considered the state examiners' opinions, who both noted a record where Claimant's BMI was 39.13. (Tr. 31, 145, 179). The Court thus finds that the ALJ's discussion implicitly included not only an assessment of the effects of Plaintiff's obesity on her ability to function, but also an explanation of how he reached his conclusions. Based on the ALJ's step four evaluation of Claimant's RFC, which included a discussion of Claimant's testimony and the medical evidence, the Court finds the ALJ sufficiently explained his reasons for concluding that Claimant's obesity caused no limitations in excess of the assigned RFC. *See Archie D. F. v. Saul*, 2021 WL 1348264, at *9 (N.D. Okla.

Apr. 12, 2021) (finding no error in evaluating obesity where "the ALJ considered 'the entire record,' including Plaintiff's obesity," and relied on a medical source opinion "which noted Plaintiff's obesity and instances of elevated BMI" as support for the RFC assessment).

Additionally, Claimant "does not point to any evidence indicating that her obesity, alone or in combination with her other impairments, results in functional limitations that would prevent her from performing" the assigned RFC, and further failed to "identify obesity as disabling impairment on the disability reports she submitted as part of her application for benefits[,] and none of her medical sources identified functional limitations caused by her obesity. [Tr. 441]." *Barbara J. B. v. Kijakazi*, 2022 WL 2343343, at *4 (N.D. Okla. June 29, 2022). Furthermore, "[a]t the administrative hearing, Plaintiff reported her height and weight in response to questioning by the ALJ, but she did not testify that obesity adversely affected her other impairments, exacerbated her pain or other symptoms, or resulted in any functional limitations." *Id.* The Court therefore finds the ALJ did not err in evaluating Claimant's obesity here. *Id.* (citing *Jimison ex rel. Sims v. Colvin*, 513 Fed. Appx. 789, 798 (10th Cir. 2013) (finding no error in ALJ's obesity analysis where there was "no record indication of any functional limitations from [the claimant's] obesity or of any impairments possibly caused or exacerbated by her obesity that are inconsistent with the RFC"); *Rose v. Colvin*, 634 Fed. Appx. 632, 637 (10th Cir. 2015) (affirming where the ALJ identified obesity as a severe impairment and included postural limitations in the RFC without discussing obesity, but the claimant failed to provide evidence that her obesity resulted in functional limitations)).

Jobs Identified. Next, Claimant contends the ALJ erred at step five in identifying jobs she could perform. At the administrative hearing, the ALJ propounded a series of hypotheticals to elicit testimony from a vocational expert ("VE") in order to determine what jobs Claimant could perform. First, he posited an individual with the same age, education, and work experience as the Claimant, who:

> can perform a range of work falling between the light and sedentary levels, specifically, the individual can perform generally the requirements of light work, but can only stand or walk a combined four hours in an eight-hour workday. The individual can frequently reach overhead with the non-dominant left upper extremity. She can frequently, but not constantly handle and finger objects bilaterally. She can understand, remember, and carry out simple tasks and instructions defined as consistent in this case with GED Reasoning Levels 1 and 2, not 3 or higher. She can relate to coworkers and supervisors on a superficial work basis. However, her work responsibilities should not include interaction with the general public and she can be exposed to the general public only on a brief incident basis. So, no customer service for example. Finally, can respond to ordinary work pressures and adapt to change in a routine work setting.

(Tr. 83). The VE testified that such person could not perform Claimant's past work, but identified the light job of office helper, DICOT § 239.567-010 (13,580 jobs) and the sedentary jobs of escort vehicle driver, DICOT § 919.663-022 (111,395 jobs), and addresser, DICOT § 209.587-010 (20,312 jobs). (Tr. 84). When the ALJ asked the VE to testify regarding jobs falling between the light and sedentary classifications, the VE testified she based her conclusions on her own experience. (Tr. 85). She indicated that she did not know why the "office helper" position was classified as light, and that "[i]t's really sedentary but that she would call it "limited light" because "you can get by with that job with four hours of standing." (Tr. 86). She testified that, otherwise, her testimony was consistent with the Dictionary of Occupational Titles ("DICOT"). Id. The ALJ offered

9

two modifications related to (1) interaction with others and (2) absenteeism. The VE testified that only the addresser would remain for the first modification, and that as to absenteeism, one day per month was the usual maximum tolerance. (Tr. 86-88)

In his written opinion at step four, the ALJ determined that Claimant's RFC included the limitations from the unmodified hypothetical described above before summarizing Claimant's hearing testimony and much of the evidence in the record. (Tr. 26-33). At step five, he identified the same three jobs above (office helper, escort vehicle driver, and addresser) as jobs she could perform.

Claimant contends the ALJ improperly determined she could perform these jobs because they all have a reasoning level of 2. Additionally, she contends the ALJ erred in finding she could perform the light job of office helper, despite the VE's testimony, because the ALJ assigned her an RFC of "less than the full range of sedentary work" (Tr. 26) and the hypothetical asked for "work falling between the light and sedentary levels." (Tr. 82). Finally, Claimant contends that, if the office helper job is eliminated, the ALJ failed to sufficiently find that there was work in significant numbers that Claimant could perform, either evaluating the jobs together or individually.

Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000)

10

[emphasis added]. Claimant first contends there is a conflict with regard to the reasoning level for all three jobs identified. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."). Claimant contends that all three jobs identified by the VE have a reasoning level of 2, *see* DICOT §§ 239.567-010, 919.663-022, 209.587-010, which she asserts conflicts with the RFC that she is confined to simple tasks.

The relevant language from Claimant's assessed RFC states, "The claimant can understand, remember, and carry out simple tasks, and instructions, consistent with GED reasoning levels 1 and 2." (Tr. 26-27). Reasoning Level 2 requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *See* DICOT §§ 239.567-010, 919.663-022, 209.587-010. The Court agrees with the Commissioner, however, that a reasoning level of two is consistent with performing simple tasks and the RFC assigned here, although a reasoning level of three is not, and that other courts have reached the same conclusion. This is particularly applicable where, as here, the RFC specifically allows for both reasoning levels in the RFC itself. *See Hackett v. Barnhart*, 395 F.3d, 1168, 1176 (10th Cir. 2005) ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should

11

be construed as a limitation to jobs with a reasoning-level rating of one. We disagree."); *see also Danette Renee G. v. Kijakazi*, 2022 WL 17338283, at *15 (D. Kan. Nov. 30, 2022) ("Reasoning Level 2 was not the specific issue in *Hackett* but this court does not find justification therein to extend its prohibition to Reasoning Level 2 in the face of DOT Appendix C and the definition of unskilled work, in the face of *Hackett'*s specific statement regarding Reasoning Level 2, and absent a specific holding by that court binding on this court."); *Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions[,] [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two.").

Next, Claimant contends that the office helper job poses a conflict because it is a light job, and her RFC is "less than the full range of sedentary work." (Tr. 26). At step 5 in his written opinion, the ALJ noted that the office helper job was light according to the Dictionary of Occupational Titles ("DICOT"), but stated in parenthesis, "generally sedentary RFC but can get by with 4 hours standing limitation." (Tr. 34). As noted above, the VE's testimony was that this job was "really sedentary" but also that she would call it "limited light." (Tr. 85-86). It is the ALJ's duty, and not the VE's, however, "to explain the resolution of the conflict irrespective of how the conflict was identified." Soc. Sec. Rul. 00-4P, 2000 WL 1898704, at *4. Here, the ALJ did not "explain in the determination or decision how he or she resolved the conflict," *id.*, and thus it is not clear that this job

falls within the assigned RFC because it is a "light" or "limited light" job even by the VE's testimony, and Claimant's RFC is for less than sedentary. However, this is harmless error because the remaining two jobs do *not* pose a conflict. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform).

Even assuming *arguendo* that the office helper job is eliminated and the other two jobs are not, Claimant next contends the Commissioner failed to prove, and the ALJ failed to make a finding, that 111,395 (escort vehicle driver) and 20,312 (addresser) jobs are sufficiently significant numbers both separately or combined. Courts have declined to set a rule establishing what constitutes a significant number of jobs for purposes of the Act. *See, e. g., Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). Instead, the ALJ should determine numerical significance based on an individualized evaluation of the facts of each case and, most importantly, his own common sense. *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (citing *Trimiar*, 966 F.2d at 1330). Factors the ALJ should consider in this analysis include: "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Trimiar*, 966 F.2d at 1330 (internal citations omitted). However, importantly here, when the number of jobs available in the national economy is "much larger" than the 650 to 900 regional jobs at issue in *Trimiar*, a multi-factor analysis is not generally necessary. *Raymond v. Astrue*, 356 Fed. Appx. 173, 178 n.2 (10th Cir. 2009) ("*Trimiar*

does not hold that . . . a court must engage in a factoral analysis when the number of jobs [nationally] available is, as here (1.34 million), much larger.").

Where "an ALJ erroneously included one or more jobs and is left with the remaining jobs a claimant can perform with her residual functional capacity[,]" *Evans v. Colvin*, 640 Fed. Appx. 731, 735-736 (10th Cir. 2016), the harmless error standard applies. *Id.* "[T]here is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100, the number of jobs in *Allen* that we refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs we have considered (in *Stokes*) to be sufficient so far for application of harmless error." *Id.* at 736. "The Tenth Circuit has noted, however, that harmless error may apply where the number of available jobs is 'considerably greater' than 100, *Allen* [*v. Barnhart*, 357 F.3d 1145 (10th Cir. 2004]*, or 'much larger' than 650 to 900, *Raymond*, 621 F.3d at 1274 n.2. Accordingly, in several cases, the Tenth Circuit has found harmless error because as a matter of law, the number of jobs constituted a 'significant number' nationally." *Harrison v. Saul*, 2020 WL 1847735, at *6 (D. Kan. Apr. 13, 2020) (citing *Shockley v. Colvin,* 564 Fed. Appx. 935, 940-941 (10th Cir. 2014) (215,000 jobs); *Chrismon v. Colvin,* 531 Fed. Appx. 893, 899-900 (10th Cir. 2013) (212,000 jobs); *Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (152,000 jobs)); *see also Bainbridge v. Colvin,* 618 Fed. Appx. 384, 391-392 (10th Cir. 2015) (500,000 jobs).

As the District of Kansas also points out, "although not in the context of harmless error analysis, many courts have affirmed ALJ findings that a number substantially less

than 45,000 is significant nationally." *Id*. (citing *Lynn v. Colvin*, 637 Fed. Appx. 495, 499 (10th Cir. 2016) (24,900 jobs nationally); *Rogers v. Astrue*, 312 Fed. Appx. 138, 142 (10th Cir. 2009) (11,000 jobs nationally); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (6,000 jobs nationally); *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997) (650 jobs statewide and 30,000 jobs nationally); *Murray v. Berryhill*, 2018 WL 2159788, at *5 (D. Kan. May 10, 2018) (6,000 jobs nationally). *See also Jones v. Colvin*, 2015 WL 5573074, at *3 (E.D. Okla. Sept. 22, 2015) (finding 15,520 jobs in the national economy significant); *Holmes v. Saul*, 2019 WL 3290492, at *6 (D. N.M July 22, 2019) (finding 11,700 jobs in the national economy significant). As there is no evidence of a shortage of jobs regionally, *see Evans*, 640 Fed. Appx. at 736 ("[A] close reading of Chavez suggests it was the extremely low number of jobs in Oklahoma (199) that drove our reluctance to find harmless error."), the Court declines here to find that jobs were not available in significant numbers where the remaining jobs available were 111,395 (escort vehicle driver) and 20,312 (addresser). *But see Andria D. B. v. Kijakazi*, 2022 WL 873614, at *6 (N.D. Okla. Mar. 23, 2022) ("Given the Tenth Circuit's preference that the ALJ evaluate numerical significance in the first instance and that the district court supply a dispositive finding only in exceptional circumstances, the undersigned declines to apply the harmless error standard and conclude that 84,000 jobs in the national economy is a significant number as a matter of law, such that 'no reasonable administrative factfinder. . . could have resolved the factual matter in any other way.'") (quoting *Allen*, 357 F.3d at 1145).

## Conclusion

The Court finds that the decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Accordingly, the decision of the Commissioner is AFFIRMED.

**DATED** this 12th day of February, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**